UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

                                                   Case No. 09-43772-608

Elizabeth Roman Cotto
and Felix Cotto,                                 Chapter 7

                       Debtors.
-------------------------------------------------------------------x

## DECISION

APPEARANCES:

| | |
|---|---|
| Robert J. Adinolfi, Esq. | Richard E. O'Connell, Esq. |
| Pellettieri, Rabstein & Altman | 22-44 Francis Lewis Blvd. |
| 100 Nassau Park Blvd., Suite 111 | Whitestone, New York 11357 |
| Princeton, New Jersey 08540 | Attorney for Trustee |
| Attorney for Debtor | |

Not Appearing:
Edward Delli Paoli, Esq.
129 Dorp Plaza
Staten Island, New York 10306
Attorney for Debtor

CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motion of the Trustee, Richard E. O'Connell, to dismiss the Chapter 7 case of Felix Cotto and Elizabeth Roman Cotto ("Debtors") as an abuse of the provisions of Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 707(b) ("Motion to Dismiss").  For the reasons set forth below, the Trustee's Motion to Dismiss is granted.

## Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O), and 1334, and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Facts

The Debtors, who are married and have a nine year old daughter, filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code on May 7, 2009.  The Debtors scheduled $115,243 in unsecured nonpriority claims, 25% of which equals $28,810.75.  On June 25, 2009, the Debtors filed an amended Official Form 22A, Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Means Test Form"), indicating that the presumption of abuse does not arise based on the Debtors' calculations of an above-median annualized Current Monthly Income ("CMI") in the amount of $106,811.88[1], or $8,900.99 per month, and allowable monthly deductions in the amount of $11,560.92.  On July 22, 2009, the Trustee filed this Motion to Dismiss, alleging that the presumption of abuse does arise under § 707(b)(2)(A)(i)(II)[2] based on corrected calculations of the Debtors' CMI and allowable

---

[1] The median income for a family size of three in New York State is $69,421.

[2] Unless otherwise indicated, statutory citations are to provisions of Title 11, U.S.C.

deductions under the means test. On October 21, 2009, the Debtors filed a Response in Opposition to the Trustee's Motion to Dismiss. On November 10, 2009, the Trustee replied. A hearing was held on the Motion to Dismiss on December 3, 2009.

## Legal Standard

The Trustee's Motion to Dismiss is pursuant to § 707(b)(1), which provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee . . . , or any party in interest, may dismiss a case filed by an individual debtor under [Chapter 7] whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under Chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1).

The Trustee argues that the Debtors' case is presumptively abusive based on his corrected calculations of the figures reported on the Debtors' Means Test Form. The means test, codified in § 707(b)(2), requires an above-median debtor to calculate his disposable income over 5 years ("Projected Disposable Income or PDI") by deducting certain statutorily allowable deductions from the debtor's CMI for the purpose of determining whether a presumption of abuse arises. § 707(b)(2)(A)(i).

CMI is defined by the Bankruptcy Code as the average monthly income from all sources that the debtor and the debtor's spouse receive during the 6-month period immediately preceding the commencement of the case. 11 U.S.C. § 101(10A)(A). Specifically excluded from CMI are "benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity . . . , and payments to victims of international terrorism . . . or domestic terrorism." 11 U.S.C. § 101(10A)(B). Expenses that may be deducted from the debtor's CMI are

provided in § 707(b)(2)(A)(ii-iv). A presumption of abuse arises if the debtor's PDI "is not less than the lesser of (I) 25 percent of the debtor's nonpriority unsecured claims in the case ($28,810.75 in this case), or $6,575, whichever is greater; or (II) $10,950." 11 U.S.C. § 707(b)(2)(A)(i). The applicable statutory threshold in this case is $10,950.

## Discussion

The Trustee argues that in computing their disposable income, the Debtors understated their income by failing to incorporate a union wage settlement in the amount of $10,711.14 received by Mrs. Cotto on February 20, 2009 ("Wage Settlement"), by deducting $5,725.06 from Mrs. Cotto's gross income for a LODI Tax Credit received by Mrs. Cotto on January 23, 2009, and by understating Mr. Cotto's monthly pension income by $563.04. The Trustee also claims that the Debtors overstated their allowable deductions, by overstating their tax expense at line 25 by $874.92 and by taking improper deductions for ownership or lease expenses for two vehicles that were not otherwise scheduled, in the amount of $489 each.

The Debtors maintain that their CMI of $8,900.99 calculated on their amended Means Test Form is correct. They argue that the Wage Settlement should not be included in the Debtors' CMI because it is non-recurring income and that the LODI Tax Credit of $5,725.06 was properly deducted from Mrs. Cotto's gross income in computing CMI. The Debtors further dispute the tax expense figure that the Trustee asserts is the correct amount, but concede that they only should have taken an expense deduction for one vehicle, not two. While not raised in their papers, the Debtors alternatively argued at the hearing that the Wage Settlement should be excluded from their CMI based on special circumstances (Hearing Tr.[3] 13:15-16.)

---

[3] Citations to "Hearing Tr." refer to the transcript of the hearing held on December 3, 2009.

### Wage Settlement

CMI as defined by § 101(10A) is a historical calculation, "firmly rooted in the past, not the future." In re Crawley, 412 B.R. 777, 784 (Bankr. E.D. Va. 2009). It "includes 'every dime a debtor gets during the relevant period except for those amounts specifically excluded by § 101(10A)(B), like Social Security Benefits.'" In re Mendelson, 412 B.R. 75, 83 (Bankr. E.D.N.Y 2009) (quoting In re DeThample, 390 B.R. 716, 721 (Bankr. D. Kan. 2008)). While Debtors argue for the exclusion of the Wage Settlement based on the fact that it is a one time only payment, § 101(10A) does not distinguish between income that is non-recurring and income that will be received on an ongoing basis. CMI is intended to be "a snapshot of the debtor's pre-petition income" and not necessarily reflective of current or future income. In re Purdy, 373 B.R. 142, 146 (Bankr. N.D. Fla 2007); In re Perelman, 419 B.R. 168, 175 (Bankr. E.D.N.Y. 2009) (means test calls for snapshot of debtor's financial circumstances as of the petition date). Mrs. Cotto received the Wage Settlement on February 20, 2009, within the six months prior to filing for bankruptcy. Pursuant to § 101(10A), the Wage Settlement must be included in the Debtors' CMI.

### LODI Tax Credit

The LODI Tax Credit should not be deducted in determining Debtors' CMI. As reflected on Mrs. Cotto's payment summary submitted with the Debtors' opposition papers, which reflects all bi-weekly payments made to Mrs. Cotto's from January 9, 2009 to October 2, 2009 ("Payment Summary"), the $5,725.06 LODI Tax Credit was already deducted from her year to date gross income balance reported on her pay statements, and therefore that amount should not be deducted again.

### Pension

The Debtors' amended Means Test Form reports Mr. Cotto's monthly pension benefit in the amount of $2,519.46. However, as the Trustee points out, the Debtors' 2008 tax return shows Mr. Cotto's annual pension to be in the amount of $36,990, or $3,082.50 per month. The Debtors did not dispute the Trustee's corrected pension amount at the hearing or in their opposition papers.

Therefore, for the reasons stated above, calculations of the Debtors' CMI must be made as follows: the Wage Settlement must be included in Mrs. Cotto's gross income at line 3, Column B; $5,725.06 representing the LODI Tax Credit should not be deducted from Mrs. Cotto's gross income as the adjustment has already been made as reflected on her pay statement; and Line 7, Column A must accurately reflect the pension received by Mr. Cotto in the amount of $3,082.50 per month.

Presumption of Abuse

When these findings are applied to the calculation of the Debtors' CMI, the Debtors' CMI is $11,324.12, which includes Mrs. Cotto's average monthly gross wages from November 2008 to April 2009 (the six calendar months preceding the filing date) in the amount of $8,241.62[4], and Mr. Cotto's average monthly pension income for the same period, in the amount of $3,082.50. Annualized, the Debtors' CMI in the amount of $133,818, is above the median income of $69,421 for a family of three in New York State. The means test must therefore be applied in accordance

---

[4]The Court was not provided with documentation indicating the precise income received by Mrs. Cotto's in November and December of 2008. In lieu of those exact figures, the Court calculated the average of the bi-weekly salaries reflected on the Payment Summary (not including the payment of the Wage Settlement), and multiplied that bi-weekly amount ($3,196) by four (4) to represent Mrs. Cotto's income for November and December. Mrs. Cotto's income for January to April was in the amount of $36,665.71 as reflected by the year to date gross income balance on her May 1, 2009 pay statement.

with § 707(b)(2)(A) in order to determine whether a presumption of abuse arises in this case. Perelman, 419 B.R. at 171 (application of means test required of debtors with above-median income); In re Dumas, 419 B.R. 704, 707 (Bankr. E.D. Tex. 2009) ("BAPCPA . . . inserted a means test into § 707(b) to determine whether a presumption of abuse should be imposed upon an above-median income debtor seeking Chapter 7 relief.").

The Debtors concede in their opposition that they improperly reported a deduction for a vehicle expense in the amount of $489. By reducing their reported deductions by $489, the Debtors' deductions amount to $11,071.92. When this amount is subtracted from the Debtors' CMI as calculated above in the amount of $11,324.12, it may be seen that the Debtors have disposable income remaining in the amount of $252.50; or $15,150 projected over 60 months, which exceeds the statutory presumption of abuse threshold in this case of $10,950. 11 U.S.C. § 707(b)(2)(A)(i).

Special Circumstances

The Debtors argued that they can demonstrate special circumstances in this case under § 707(b)(2)(B) and rebut the presumption of abuse. "Demonstrating special circumstances is the means by which a debtor rebuts a presumption of abuse and can therefore alter the amounts listed as expenses and/or income on [the Means Test Form]." In re Brown, 2009 Bankr. LEXIS 2672 at *8 (Bankr. N.D.N.Y. Mar. 30, 2009). Debtors claim that the non-recurring nature of the Wage Settlement is itself a "special circumstance" sufficient to rebut the presumption of abuse, and justifies the Wage Settlement's exclusion from the Debtors' CMI by the Court. (Hearing Tr. 13:15-17.)

What constitutes a "special circumstance" is by no means well settled.  <u>In re Cribbs</u>, 387 B.R. 324, 329 (Bankr. S.D. Ga. 2008) ("Courts have struggled to define the scope of what constitutes a "special circumstance.")  The statute provides a debtor may rebut the presumption of abuse "by demonstrating special circumstances such as a serious medical condition or a call or order to active duty in the armed forces . . . that justify additional expenses or adjustments of [CMI] for which there is no reasonable alternative."  11 U.S.C. § 707(b)(2)(B).  <u>See</u> <u>Egenjerg v. Anderson (In re Egebjerg)</u>, 574 F.3d 1045, 1053 (9th Cir. 2009).  While the Debtors do not provide a justification for a reduction in their CMI that resembles the examples provided in the statute, the examples are not intended to be an exhaustive list.  <u>Id.</u>; <u>In re Carrillo</u>, 421 B.R. 540, 543 (Bankr. D. Ariz. 2009).  Nevertheless, the Debtors' argument that the Court should subtract a one time payment from their CMI because the fact that the payment is non-recurring constitutes a "special circumstance," flies in the face of Congress' clear intent to include income from all sources in CMI, with certain specific statutory exceptions.  11 U.S.C. § 101(10A); <u>Mendelson</u>, 412 B.R. at 83.

"'The Supreme Court and this Court have warned on countless occasions against judges 'improving' plain statutory language in order to better carry out what they perceive to be the legislative purposes.'"  <u>Perelman</u>, 419 B.R. at 175-176 (<u>quoting</u> <u>Bracewell v. Kelley</u> (<u>In re Bracewell</u>), 454 F.3d 1234, 1240 (11th Cir. 2006).  The plain language of § 101(10A) is clear and consistent with Congress' intent in creating the means test in the context of a bankruptcy case filed under Chapter 7: to provide "a mechanical formula for establishing a presumptive bar to obtaining relief in a Chapter 7 case."  <u>In re Ralston</u>, 400 B.R. 854, 863 (Bankr. M.D. Fla. 2009); <u>See also</u> <u>McDow v. Harvey (In re Harvey)</u>, 407 B.R. 867, 873 (Bankr. W.D. Va. 2009) (intent of Congress in creating means test "was to create a more objective standard for establishing a presumption of

8

abuse and to reduce judicial discretion in the process."); In re Randle, 358 B.R. 360, 364 (Bankr. N.D. Ill. 2006) ("Congress' intent to use standardized . . . test and avoid reliance on individualized information as much as possible is demonstrated throughout § 707 (b)(2).); Cribbs, 387 B.R. at 332 (means test "not intended to . . . produce the most accurate prediction of debtor's actual ability to fund a chapter 13 plan.") (citation omitted).

The Court cannot conclude that Congress intended the "special circumstances" exception to strict application of the means test to undermine the unambiguous definition of CMI. Section 101(10A) sets forth specific enumerated exceptions to categories of income that must be included in CMI. A non-recurring, one-time only payment is not one of those exceptions. "A broad reading is one thing; a reading contrary to the plain meaning of clear statutory language is another." Bracewell, 454 F.3d at 1240 (11th Cir. 2006).

## Conclusion

The Trustee's Motion to Dismiss is granted. A separate order shall issue herewith.



**Dated: Brooklyn, New York**
**March 12, 2010**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**